Next case is 4090249 Lovell v. Sarah Bush Lincoln Health Center. We shall have the appellant, Karen Kendall, for the happily Michael Ratzak. And Ms. Kendall, you may proceed. Thank you, Your Honor. If it please this court and counsel, My name is Karen Kendall and today I represent Sarah Bush Lincoln Health Center. This appeal arises out of a jury trial. The jury trial resulted in a $2.3 million verdict in favor of the plaintiff. This case was tried as a case of admitted negligence. The jury was instructed, after hearing all the evidence, that the defendant admits that it was negligent. You need only decide whether the defendant's negligence was an approximate cause of the injuries to the plaintiff, and if so, what amount of money would reasonably and fairly compensate the plaintiff for those injuries.  We all know the function of opening statement. Opening statement begins the trial. It's the opportunity for the attorney to tell the jury what, in good faith, he anticipates the evidence will show. The purpose of opening statement is to allow the jury to see the big picture, so that if they hear witnesses out of order or out of sequence, they can actually put them into the puzzle and better understand the evidence. The function is very clear and it's undisputed. What this jury heard was, mistakes matter, negligence matters. On August 16, 2003, the plaintiff suffered a devastating and grotesque injury when the defendant's nurse disregarded a doctor's order. I submit that such a statement has no place in an opening statement at a jury trial. Ms. Kendall, here's the problem. Assuming you're right, why don't we have timely abductions made to the plaintiff? I'm going to make these allegedly improper remarks so that the trial court can take action to stop it or correct it or whatever other action is appropriate. Mistakes matter. Objection. Negligence matters. Objection. On August 16, 2003, the plaintiff suffered devastating and grotesque injuries. Objection. When a nurse disregarded a doctor's order. Objection. You know, the jury is excited about hearing. They're excited about being jurors. You know, they've got a big responsibility. This is a big case. They're sitting listening rapidly to the first words, the first words out of the plaintiff's counsel's mouth. This is the best opportunity to communicate with the jury. They're not tired. They're eager. They're interested. They're not confused. You have the very best time. This is not the time for defense counsel, mistakes matter, objection, to interfere with the plaintiff's opportunity to talk to the jury. This court, this court in Downey v. Dunnington, in a case where what the defense counsel had done was question the defendant doctor about his background and he said, well, my father was a minister. This became an issue, not in the case, but an issue on appeal. And this court said in the strongest possible language, that's wrong. Why was it wrong? Not because it was inflammatory like this rhetoric. It was wrong because it was simply irrelevant. It didn't relate to any issue. And this court in Downey recognized the trap laid by plaintiff's counsel in those first words at this trial. The trap of either objecting and overemphasizing the objectionable material or alienating the jury or both. It's a trap. The difficulty is, I think Ms. Kendall, is you're interposing what is a correct analysis and proper trial technique to excuse the lack of a timely objection, which is based on the rules of evidence. And it may have been a trap by the plaintiff to try to generate such an objection. But there is a way to do it in the first instance, and that is to make your objection, may we approach, and have a sidebar with the trial court saying, I want you to instruct this attorney not to do this anymore. Otherwise, I'm going to move for a mistrial right now. Your Honor, I think you and I both know that it would be an extraordinary attorney who risked interrupting the first words in opening statement. I agree that the waiver argument is there. I think this court will agree with me that this was improper. I mean, it wasn't just a little bit improper. It wasn't just one question like in the Downey case. This was over and over and over again an attempt where the defendant had already admitted negligence to demonize the hospital, to blame the hospital. And what was the blame for refusing to admit proximate cause in addition to negligence? My understanding is, from this record, is that the first and only objection to the opening statement occurred after Lovehold already conveyed over 80 percent of the opening statement to the jury. I don't know that it was over 80 percent, but yes, I agree with you. The objection wasn't made right at the outset. And I agree with you that there's only one objection, Your Honor. And I agree with you that the trial judge admonished plaintiff's counsel that we're not at closing argument. I'm not even sure this would pass muster in closing argument in a case of admitted negligence, to be honest with you. Are we going to have rules where, oh, it's what you do. I know we do have to object. Obviously we have to object. And when we should really object and where this court should apply waiver, which of course is a limitation on us, but not on you. You don't have to apply waiver. But it's something like hearsay. You know, where the rules of evidence are violated either intentionally or inadvertently. Here, the first thing you learn in trial ed, you know, in the first day, is that you don't make an opening statement, number one, that misrepresents the evidence. Number two, that's an appeal to the patience of the jury. Number three, Michelle Smiser was the CNA. She disregarded a doctor's order? That's not in the evidence. Nobody said that. Counsel, why wouldn't we be in a position to say, if we were to grant your request in reverse on the grounds you suggest, say we're now going to open up the door to sitting back and just letting it all happen and just argue on appeal that this is just bad, judge. And you shouldn't permit it. And sure, I didn't object. But it's just so bad that you have to reverse an adverse verdict against us. Wouldn't that be the rule? Isn't that what you're essentially inviting us to create this rule for? I don't think so, Your Honor. The case law is clear. And there's just a new case handed down that I filed with this court yesterday. The case law is clear that in times of an extraordinary deprivation of a fair trial, this court must step in. Every instance, first of all, I would hope that what this court sees is most of the time not a misuse of opening statement like this. I would hope that this is very rare. I would also hope, though, at the same time that this court would say, as it does from time to time, there should be an objection. We understand that there can be a nefarious purpose to counsel's conduct. And we are not going to tolerate it. Well, you're looking here at a bench of three decades, of being trial judges. We've been in positions like this. Speaking for myself, I'm kind of an adherent to the third base umpire school of jurisprudence. It's not my business to interfere with the trial of the case. And if something, you're describing this to us as if this is an outrageous situation, a miscarriage of justice occurring. And I'm thinking, so the defense attorney is a potted plant? What's going on here? If it's that bad, how about seeking some relief? How about doing what Justice Appleton suggested? How about doing something else about it or raising some sort of objection? I understand that the jury at the beginning wants to hear it, and that this is a bad business if you're hearing an improper opening statement. But courts have remedies that they can utilize if asked. And I think it's, there are real problems when, as here, the defendant says, this is so terrible that you're going to have to reverse on this grounds alone. But it wasn't terrible enough at the time for me to ask for any relief. Actually, your honor, we're not saying that this grounds alone is necessarily what this court should be doing. Or should look at. From the beginning where, you know, everybody knows you can't say send a message. You can't say what kind of conduct is going to be tolerated. You can't say all these things. But at the end, you can't say, and by the way, jury, Judge Scott made special accommodations to the plaintiff. You can't do that either. There was a motion for a mistrial on that basis. After the court raised the sua sponte. Yeah, the court did. There was not even an objection raised. The court had to say, by the way, I'm uncomfortable with this counsel. Judge Scott didn't raise it mildly. He raised it, I'm very disturbed. I'm going to admonish you. You aligned the plaintiff with the court. You compromised my integrity and my impartiality. This court, and I agree with you, there's a referee function. But this court can, and should in this case, go beyond that mere referee function when a defendant has been denied a fair trial. I would submit to you that the plaintiff's counsel in this case has earned a new trial. Do you really want appeal after appeal after appeal where we have an opening statement that is this shocking? Do we really want closing arguments where the jury is told that the judge has made special accommodations to the plaintiff, thereby intentionally compromising the integrity and impartiality of the jury? Do we want intentional misstatements in opening statements saying that a CNA disregarded a doctor's order when there's no evidence in this case that that's what happened? Why isn't that inferential? Because she said she didn't see the order. And nobody contradicted her. That has to be believed? Well, there isn't any other testimony that we can infer anything else from. Well, I can say she says that, but there it was written. And she said she didn't see the record, she didn't see the order. She said she didn't look, but there it was written. And didn't they establish that the normal process was that you're supposed to look and you do look normally? Let's say that we've got solid evidence that she disregarded it. That would make that statement accurate, but it wouldn't make it relevant. It's not relevant. When Sarah Bush comes in and says, we have a mistake here. Our certified nursing assistant did something that she shouldn't have done. We admit it. It's not relevant whether she disregarded it. Or not. For closing argument, if that was evidence before the jury, they could argue it. What's the relevancy standard in closing argument? You have to, it has to be evidence. Well. Okay. Or reason one, for instance, they're a fraud. I don't think it's relevant to the issues the jury had to decide. You know, I started this argument saying what they had to decide were two things. Did the admitted negligence proximally cause the fistula? Actually, in medical terms, the question is did the administration of the enema proximally cause the fistula? That's the medical question. And there was a whole lot of expert testimony conflicting on that question. And if so, how much money are we going to award for those injuries? Is there a second line that could be pursued by this court? That is, if we agree with you that this behavior was unprofessional and improper in the argument, aside from the fact that the defense didn't object, could we refer this matter to the ARDC for action to be taken against plaintiff's counsel? And should we? I profess to be an expert in appellate practice. I do not profess to be an expert in HMEL or new code of professional responsibility, which takes effect January 1st, or anything else, Your Honor. Well, you know, why not? If you raise the interesting question, if we're going to accept sleazy practices, then maybe we'll see more of it, but that might be an alternative independent issue to deal with, if this is, in fact, sleazy practice that may be, whether objected to or not, it's a matter which counsel could defend before a body of his peers, the Supreme Court Committee, and let them decide whether or not this is something where disciplinary action should be taken. I don't see how that would provide Sarah Bush with a fair trial. Well, it wouldn't. That's why I say it's a separate independent action, because the problem with Sarah Bush is you're kind of sitting there letting all this happen, and that's the real problem. We have a forfeiture issue here, counsel, and you've deprived the Court of the opportunity to correct the problem. Your Honor, every case in which gross misconduct occurs repeatedly and brazenly does not result in forfeiture, even when not objected to. I'm not saying this Court can't find waiver. I'm saying that in duty to our system of justice, I'm asking this Court to rule. The forfeiture argument is, you know, this duty to our system of justice, I have real problems with us stepping in and protecting the party from itself. We're not talking about Allstate versus the little old lady here. We're talking about a medical malpractice case, and we expect counsel for the hospital physicians to be competent counsel, to understand the rules, and to make the appropriate objections and arguments, and not to come up and say, please save me from myself on appeal. Well, in that situation, the plaintiff wins every time, and the reason the plaintiff wins every time is the defendant has been forced to call further attention to the improper argument, and then forced to risk alienating the jury. See, if I'm a trial judge, though, there are steps I could take if asked that I think might deprive plaintiff's counsel of the benefit of the improper argument. But I'm sitting there watching, and I don't think I can or should sui sponte intervene. And you're essentially arguing to us that the improper argument is irremediable. And I don't see how that's the case, if proper objection is made, timely made. Justice Appleton suggested some of the things that could be done about it. Your Honor, you know, courts have said, and I can't bring the name of the case to mind right now, but I quoted in my brief, courts have said, once you lodge this in the minds of a juror, even an instruction to the jury to disregard it won't work, isn't sufficient under some circumstances. I would suggest that this is exactly the type of circumstance that some kind of remedial measure would not work in. Was Mr. Ratzak the plaintiff's counsel at trial? Who was? I'm sorry, I forgot to say. Okay. Thank you. Time is up. You're given an opportunity to address us again in rebuttal. Okay, Mr. Ratzak. Good morning, Your Honor. This is Michael Ratzak. I'm here on behalf of the plaintiff at relief. Who was counsel at trial? Ryan, Alex Sukman and Ryan Yagoda, Your Honor. Pardon? Alex Sukman and Ryan Yagoda. Their names are on the front of the brief. They're the two names above mine on the brief. Okay. As of counsel, I'm sorry. Do you think there's a matter we should turn over to the ARDC for action, counsel? No, not at all. Why not? And I want to address that first. The opening statement, the first words were negligence matters, mistakes matter. And that was the point of the hospital. The hospital admitted they made a mistake. Those were the first words. What about the rest of the 27 pages? Those were the ones that counsel concentrated on. So if I can start with those, because that set the tone for everything. I'll address the rest of it. I agree. The hospital's defense was it didn't matter. Our mistakes didn't matter. Our negligence didn't matter. That this happened, this was a coincidence. And that's what counsel then went on to address in his opening statement. They said the hospital was going to tell you that the doctors were at fault. That was another one of the things they're complaining about here. And they did, in fact, say that the doctors, the surgeons were at fault. They blamed the surgeons. So on the merits, you're defending the circumstances. Yes, I am. Yes, I am. So our judgment that it was sleazy and improper is just an error. I would. Or at least my judgment that it was sleazy and improper. I'm sorry, Your Honor, I would respectfully disagree with you on that. So you think had an objection been made, I'm just going to say as trial judge, Hey, no problem, counsel. It's hard for me to say what a trial court judge would have done, except that I suspect, I'm more than suspect, because I was in the trenches myself for a long time before I was able to kind of triage cases and get a chance to read records slowly and carefully, think it over before I talk. Somebody who stands up and says mistakes matter, negligence matters, when a hospital says they don't. And that's an appropriate way of describing evidence that's going to be presented. Is that correct? Yes, sir. In this case, that was exactly the evidence that was presented. Because that's that argument. That's describing evidence you're going to present. That's my position. And if the other side thinks it's argument, and the trial court judge thinks it's argument, then some trial court judges are going to hammer down on both counsel immediately. And you think the ARDC would view that as just an opening statement? Yes. I'm familiar with that area, and I've never seen anything like that raised or suggested that it was bad. If somebody thinks it's bad, one would think that the opposing counsel would bring it to your attention. If I can call to this court's attention, this case with the trial was contentious, but it wasn't overly contentious. Both sides let the other side play sort of loose, close to the edge. And I will call to the court's attention the exchange with defense counsel in Dr. Reeves' face. Dr. Reeves, we know each other. We're on first-name basis. Let me put it to you. Let me ask you about this. We know each other really well. Did she just make a mistake here? That's not proper. That's bringing the lawyer and his relationship with the witness right into the case. That's completely improper. Yet we didn't object. We let this trial roll on as it did, as both sides did. And if that's going to be how the trial is going to be held, so be it, so long as somebody doesn't do anything wrong. And nobody respectfully disagrees. I don't believe something was actually done that's blatantly wrong. The evidence was that the hospital was denying the negligence matter. Tell me about the judge's special accommodations for your clients. Yes. Why that was an appropriate part of closing your argument? Because it was part of the damages argument, and the point that counsel was making was simply that no matter where Dean went for the rest of his life, the evidence came out of the trial, he has to go to the bathroom about every two hours. You understand the process that he used. He has to be near a bathroom. So the point was that no matter where he goes, unlike me or anybody else in this courtroom who doesn't have to worry about it, he's got to know where the bathroom is, he's got to be able to get to it. And that means he's always going to need an accommodation from somebody, and the alliance of the jury was he's going to need an accommodation like the one that was, he'll need accommodations from people like the judge and others. So this was an inadvertent reference to the judge, is that right? It was. Dean just slipped up? These counsel, Your Honor, are represented before, Your Honor's seen their work before, they're carefully prepared. There wasn't an effort to just kind of, as Judge Scott, where did he get off thinking that somehow he was being aligned with the plaintiff, right? He had no reason to think that way. Why don't people on the jury think that because, and by the way, no one knows, nobody on the jury knew what the special accommodation was. The special accommodation was. Well, not until closing argument, I guess. No, even then they didn't know. The special accommodation was that Dean was allowed to get up and leave the courtroom and go through a door there. That's all they knew. As opposed to, Your Honor, having counsel stand up, parade in front of the jury and go out in the hallway. So closing argument, which is designed to be consisting of representations of the evidence before the jury, this was part of it? And the evidence before the jury was that he needed a special accommodation that he had to go every two hours. And part of that evidence before the jury is, and here is a special accommodation, the judge hearing this case made. What part of the record did that appear, counsel? That in the cross-examination of Dean and defense counsel, it came out from Dean himself that he'd seen him leave the courtroom. And the judge later on, in ruling at the very end on the part that Your Honor is confronting, pointed out that the jury had seen him go through and was aware that Dean was going not through the public entrance, but was going someplace. We don't know where it was. What part of the record contains the reference to the special accommodation the judge made? The judge did not. Because, you see, closing argument is supposed to be based on evidence in the record. I want you to tell me where it was. There are no words that say that the judge is making a special accommodation. But as Your Honor suggested earlier in the other part of this argument, we're allowed to draw inferences. I would think the inference would be everybody else has to use the appropriate reference. This gentleman apparently gets, without permission, and everybody knows that courtroom is under control, no juror can get up and just say, I'm going to leave right now. He was allowed to go when he wanted to. And they needed to know there was a special accommodation from the judge. Right? They saw that. And the judge was made, not the sheriff, not the bailiff, not the circuit. The judge, the guy who's trying the case, he's the one who made it. That was an important thing to convey to the juror. I don't think it was important at all. I think it was so minimal that it was so minimal. Maybe it just slipped out. Counsel, who knows? If it was minimal, I doubt that Judge Scott would have stopped the proceedings and objected. Judge Scott was obviously very irritated with us at that point. I can prove that it was minimal because defense counsel apparently thought it was minimal, too. He didn't say anything. Even after Judge Scott said, I have a problem with this, they waited until we were done, and there was a break. And then the judge obviously expresses irritation. I think you can see from the transcript. I think even our lawyer was a little bit surprised. There was another break, and then defense counsel said, oh, this must have really been bad. If it was really bad, I think we would have heard about it earlier. The trial court judge ultimately used his discretion and said, as a matter of fact, the trial court judge said, I don't think this was intentional. That was his finding. He was there. He saw what happened. He denied their motion, and I suggested to the court that if he'd have thought otherwise, he would have done something different. I would suggest that that's within the scope of his discretion. I understand Your Honor's concern with that situation, but we do have a trial court that specifically said it wasn't intentional, and that would answer Your Honor's question. Counsel pointed out that they have requested leave to cite as additional authority the Pleasant's opinion that came down recently. I don't know that that would have even reached Your Honor's desk yet if it's been filed by mail. All I can say at that point is it's a case that a plain error was found in the First District, and I'll have to allow Your Honor to read the opinion and distinguish that from what happened here. This was a 27-page opening statement with one objection. And the one objection, as a matter of fact, was to the fact that the hospital would argue, the plaintiff's counsel said the hospital argued that perforation existed before the enema, and that the enema actually diagnosed the hole. And that was their defense. The judge sustained that objection and lectured us on that one because we added the phrase that Dean should thank them for discovering it. It was a fairly sarcastic remark to make an open statement, but it was really true. The hospital was arguing in between the lines. We found this preexisting condition with the enema, and now he was able to fix it. We hadn't found it. The inference was if we hadn't discovered it with the enema, this would have been there for a longer period of time and caused more problems. So in essence, even the one thing they objected to was they had a foundation in the record. And if it was overly stated, that's why we have objections. That's why we have some judges who sustain them and some don't. Some run a tight courtroom and some don't. Unless Your Honors have further questions, I'm aware from the questioning and answering with the issues, and we simply obviously ask that the decision be approved. Thank you very much. Thank you, Counsel. Ms. Kendall? The comment that was objected to by defense counsel in opening statement was when plaintiff told the jury, this case is about what value we as a society place on medical negligence. Objection sustained. We're not at closing argument. I am actually surprised that plaintiff's counsel is standing before this court and saying that the argument, inflammatory argument, inflammatory irrelevant and inaccurate argument made to the jury at opening statement is proper. From my perspective, this only serves to emphasize the need for this court to do what it did in the Downey case and say in the clearest possible terms, this conduct is not proper and this conduct will not be tolerated. Trials really aren't about how much you can get away with. If you have that view, you really aren't looking at the trial in the way our system of justice is intended to look at a trial. It really is supposed to be a search for the truth, not a matter of gamesmanship or brinksmanship. The province of the jury is to resolve narrow factual issues. The narrow factual issue this jury had to decide was did the enema approximately cause the fistula. That's all. When you read the plaintiff's opening statement, you would not know what this case was about. You would know that it was wholly improper and that there is no way to justify it. There's no way to justify closing argument, calling the court's integrity and impartiality into question. It goes to damages. It doesn't go to damages. It was a cheap, slick, improper alignment of the court. What about the Dr. Reed stuff that counsel made reference to, where defense counsel say, hey, we're buds. What about that? This appeal isn't about anything other than whether there was error sufficient to deprive this defendant of a fair trial. Mr. Radzak argues that this was a situation where both sides stretched things and it was kind of just good for the goose, good for the gander. You hold the opening statement by defense counsel up next to the opening statement by plaintiff's counsel, put them in a trial ed textbook, and ask every student who reads them which one followed the rules and which didn't. We should not allow the system to become so distorted and so full of brinksmanship and gamesmanship that what the court says is to the defense counsel, you didn't police the plaintiff's counsel for every word. That's wrong. It's simply wrong. There was a nefarious purpose underlying the entire opening statement. And the thing was, it was effective. It worked. It distracted the jury's attention. It inflamed their passions. It talked about severe, grotesque, catastrophic injuries and blamed the defendant in an admitted negligence case. This is an opportunity for this court to talk about trial conduct and the responsibility of each of us as trial lawyers. We ask that you grant the defendant what it deserves and what plaintiff's counsel earned, a new trial. Thank you. Thank you, counsel. We'll take this matter under advisement. Please recess for a few moments.